Fishoff v. Coty

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2010

(Argued: October 13, 2010                    Decided: March 4, 2011)

Docket No. 10-0536-cv

————————————

MICHAEL FISHOFF,

    *Plaintiff-Appellee*,

        v.

COTY INC.,

    *Defendant-Appellant*.

————————————

Before: KEARSE, POOLER, and HALL, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) entered on February 5, 2010, in which the court awarded damages to Plaintiff-Appellee Michael Fishoff based upon its finding that Coty Inc. breached an options contract by retroactively valuing the company's shares such that Fishoff's options were worth approximately half of what all other options exercised in November 2008 were worth. Because nothing in the contract expressly authorized Coty to arbitrarily and retroactively re-value Fishoff's shares after he had exercised them, we affirm the judgment of the district court.

**AFFIRMED**.

————————————

C. EVAN STEWART, Laura E. Neish, Zuckerman Spaeder LLP, New York, NY; Charles Matays, Matays & Kretschmann, New York, NY, *for Plaintiff-Appellee*.

ERIC M. NELSON, Lisa M. Sofio, Winston & Strawn LLP, New York, NY, *for Defendant-Appellants*.

POOLER, *Circuit Judge*:

This appeal was taken from a final judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) entered on February 5, 2010, in which the court awarded damages to Plaintiff-Appellee Michael Fishoff based upon its finding that Coty Inc. breached an options contract by retroactively valuing the company's shares such that Fishoff's options were worth approximately half of what all other options exercised in November 2008 were worth. Because nothing in the contract expressly authorized Coty to arbitrarily and retroactively re-value Fishoff's shares after he had exercised them, we affirm the order of the district court.

## BACKGROUND

Appellee Michael Fishoff was employed by Appellant Coty Inc., a privately held corporation, which describes itself as "a global beauty leader and the world's largest fragrance company." Fishoff served as Coty's Chief Financial Officer from July 2002 until December 2008, when the company severed its employment contract with Fishoff. The facts of this lawsuit arise from efforts by the company, coinciding with the termination of Fishoff's employment, to reduce the value of his stock options.

When Fishoff was hired in 2002, Coty provided him with an employment letter addressing his compensation package, including his eligibility to participate in the company's Long-Term Incentive Plan ("LTIP" or "Plan"). In November 2002, Coty awarded Fishoff a nonqualified

2

stock option to purchase up to 50,000 shares of Coty stock at a purchase price of $14 per share. Approximately one year later, Fishoff was awarded another 50,000 nonqualified stock options at a purchase price of $17 per share. In September 2004, he received 50,000 additional options with a purchase price of $23.25. And in September 2005, Fishoff received his final installment of 50,000 options with a purchase price of $25.50 per share. Each of these awards was governed by the terms of Coty's LTIP.

The LTIP states, inter alia, that "[u]nless otherwise expressly provided in the Plan," Coty's Board of Directors, which operated as the "Committee" charged with administering the LTIP, retains discretion to interpret the terms of the LTIP. Pursuant to this discretion, the Board may "amend any terms of, or alter, suspend, discontinue, cancel or terminate" existing awards "consistent with the latest version of the Plan as in effect from time to time." The Plan further provides "there is no obligation for uniformity of treatment of Employees, Participants, or holders or beneficiaries of Awards," and "[t]he terms and conditions of Awards need not be the same with respect to each recipient." "Award" is defined to include, inter alia, the types of stock options at issue in this case.

Section 6 of the LTIP relates to the Board's discretion with respect to specific awards, providing, among other things, that the Board determines who receives options and how many options each individual receives; what, if any, restrictions there are on when those options can be exercised; and how much the optionee will receive after cashing in, or exercising, the option. Except in circumstances not relevant here, the LTIP provides: "Upon any valid exercise of an Option or any portion thereof . . . the respective Participant shall be entitled to receive only a payment in cash equal to the excess, if any, of the Fair Market Value, as of the Exercise Date, of

3

the Shares underlying the Option or portion thereof so exercised over the aggregate exercise price of such Option or portion thereof." The defined term, "Fair Market Value," means the cash value of the share underlying each option. Pursuant to the terms of the Plan, Fair Market Value was to "be determined" by the Board periodically (the "Valuation Date[s]"), "using a nationally recognized investment bank (or other comparable valuation expert) selected by the [Board]."

In terms of the restrictions on the exercise of the options at issue in this case, the LTIP provides that options "may be exercised *only* on an Exercise Date," which is defined as "the last day of any month, except the month prior to the month in which a Valuation Date falls." **[A30]** Coty states that Valuation Dates were usually in March and September, but the LTIP does not specify any particular date on which a valuation must take place.

The parties have not provided much color on Fishoff's relationship with Coty, but it clearly reached a low point during his last months at the company. In September 2008, the Board determined that the Fair Market Value of Coty's stock was $58 per share. Approximately two months later, Fishoff decided to exercise all of his 200,000 options and provided the company with notice of the transaction. Because the November Exercise Date (November 30, 2008) fell on a Sunday, Fishoff tendered his notice in person on Monday, December 1, 2008, as he was entitled to do by New York General Construction Law Section 25. The next day, Coty confirmed that Fishoff's notice was effective for the month of November and they provided him with notice of the cash value for his redemption, which totaled $7,612,500.

Three days later, Coty changed course, and the Board convened an official meeting on December 5 to alter the established terms of the LTIP. First, the Board voided all options exercise notices that had been tendered in December, including Fishoff's, on the ground that the

4

notices were late because they were not provided on or before Sunday, November 30, 2008. Second, the Board decided there would be four valuation dates each year instead of two. Third, the Board redefined "Exercise Date" such that an optionee could only exercise options four times a year, on the fifteenth business day after each valuation. Fourth, the Board decided that January 31, 2009, would be the next valuation date, and if anyone wanted to exercise their options, they would have to wait until February 2009.

Four days later, on December 9, 2008, Coty informed Fishoff that his options exercise had been voided, because it was not "submitted prior to the last day of the month." Two days later, Coty notified Fishoff that his employment was being terminated.

Fishoff consulted a lawyer about Coty's treatment of his options. That lawyer, apparently concluding that Fishoff had a cause of action against the company, drafted a complaint on Fishoff's behalf, which Fishoff forwarded to Coty's Board. Shortly thereafter, on January 19, 2009, the Board convened again.

As the Board's actions during the January meeting suggest, Coty developed a plan to avoid paying Fishoff based on the then-applicable Fair Market Value of the shares. First, Coty would agree to honor Fishoff's options exercise as a November exercise, though the company would not pay Fishoff the $58 per share he was entitled to as a November exerciser. Rather, the Board would authorize a special valuation limited exclusively to Fishoff's shares. Thus, while everyone else who exercised options in November received $58 per share, Fishoff would receive some other payment amount. Then, Coty engaged a new bank, Rothschild, Inc., to conduct a valuation that would set the value of Fishoff's shares as of November 30, 2008. On February 19, 2009, more than two months after he exercised his options, the Board notified Fishoff that

5

Rothschild had finally reached a dollar value for his options. Fishoff was to receive $31 per share for a total cash payment of approximately $2.2 million, or $5.4 million less than he would have gotten had he been treated the same as all of the other optionees who exercised options in November.

## PROCEDURAL HISTORY

Three days after the Board decided to retroactively reduce the value of his options from $7,612,500 to $2,212,500, Fishoff commenced this lawsuit. His complaint alleged, among other things, violations of Section 10(b) of the Securities Exchange Act of 1934, common law fraud, and breach of contract. Shortly thereafter, Coty filed a motion to dismiss the securities and common law fraud claims in Fishoff's complaint, which the district court granted because, inter alia, the LTIP was not a security as that term is defined in the Securities Exchange Act of 1934, and Fishoff failed to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).

On July 17, 2009, the district court issued a memorandum opinion and order applying New York General Construction Law Section 25 to hold that Fishoff had timely exercised his options for November 2008, even though he had not filed his notice of intent to exercise until Monday, December 1, 2008. *See Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2009 WL 2146791 (S.D.N.Y. July 17, 2009). New York General Construction Law Section 25 states that "[w]here a contract by its terms authorizes or requires the payment of money or the performance of a condition on a . . . Sunday[,] . . . unless the contract expressly or impliedly indicates a different intent, such payment may be made or condition performed on the next succeeding business day."

6

N.Y. Gen. Constr. Law § 25. The district court reasoned that "[b]ecause an option is 'a contract to keep an offer open,' the offeree must do something to accept the offer," and "[t]hat required 'something' can reasonably be seen as a 'condition' (as that term is used in [section] 25) that must be performed for the offer to be accepted.'" *Fishoff*, 2009 WL 2146791, at *2 (internal quotation marks omitted). Applied in the context of the LTIP and Award Agreements, the district court explained, "Coty's main contention is that section 3(a) of the Award Agreements allows for the exercise of an option to be made 'at any time.' Coty ignores that section 3(a) explicitly qualifies its own applicability with the preface, '[s]ubject to the provisions of the [LTIP] and this Award (including [s]ection 3(e))[.]'" *Id.* The district court continued,

> [S]ection 3(e) states explicitly, "notwithstanding the foregoing, the Option may be exercised . . . only . . . as of an Exercise Date." Because the Award Agreements do not define "Exercise Date," one must look to the LTIP, which defines that term as "the last day of any month." Section 6(d)(ii) of the LTIP qualifies these terms further; it states, "any provision of the [LTIP] or any Award Agreement to the contrary notwithstanding, the provisions of this section [ ] shall apply . . . . Options becoming exercisable in accordance with their terms may be exercised *only on an Exercise Date*."

*Id.* (footnotes omitted, alterations in original). The district court thus concluded that, "Section 25 of the GCL extends that date to Monday if the last day of the month is a Sunday. Indeed, in Fishoff's case, because November 30, 2008 was a Sunday, his December 1, 2008 exercise [was] a condition that was otherwise expected to be performed on a Sunday [and therefore] was a timely 'November' exercise." *Id.* (footnote omitted).

Based in part on its finding that Fishoff had filed a timely November options exercise, the district court denied summary judgment to Coty on Fishoff's breach of contract claim. *See Fishoff v. Coty Inc.*, 676 F. Supp. 2d 209 (S.D.N.Y. 2009). The district court framed the

7

dispositive issue as "whether the LTIP permits Coty the discretion to apply different Fair Market Values to shares exercised by different Participants on the same day." *Id.* at 217. Having concluded that "[t]he answer [was] clear—the LTIP is unambiguous and does not provide for such discretion," *id.*, the district court explained that the sole remaining issue left "open for discovery" was whether any other November exercisers were awarded payments of $58 per share minus their respective purchase prices. *Id.* at 219. At a status conference shortly after the district court issued its summary judgment opinion, Coty stipulated that every other LTIP participant who had delivered a timely November exercise received payment based upon the $58 per share price. Accordingly, the district court issued an order awarding Fishoff the difference between Coty's retroactive valuation and the $58 per share rate, which amounted to $5.4 million, plus pre-judgment interest on that sum.

For the reasons set forth below, we affirm.

## DISCUSSION

### I.    Standard of Review

Contract interpretation is a question of law that we review de novo. *Lee v. BSB Greenwich Mortgage Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001).

### II.    New York General Construction Law

New York General Construction Law Section 25 provides in relevant part that: "Where a contract by its terms authorizes or requires the payment of money or performance of a condition on a Saturday, Sunday or a public holiday . . . unless the contract expressly or impliedly indicates a different intent, such payment may be made or condition performed on the next succeeding business day." N.Y. Gen. Constr. Law § 25. According to the terms of LTIP Section 6(d)(ii),

8

Fishoff's options could *only* be exercised on an "Exercise Date," which was defined in Section 2 of the LTIP, in pertinent part, as "the last day of any month." In 2008, November 30 was a Sunday. Accordingly, Fishoff personally delivered his notice of intent to exercise his options on Monday, December 1, 2008, and the district court deemed this a timely exercise pursuant to New York General Construction Law Section 25.

Coty argues that the district court's conclusion was in error because the LTIP does not *require* an optionee to deliver his notice of intent to exercise on an Exercise Date; it only limits the day on which such options can be processed. The plain language of Section 25, however, is not limited to "required" acts; it also reaches acts that are "authorized." Plainly, the LTIP authorized the filing of a notice of intent to exercise on an Exercise Date; Coty does not argue otherwise. Under the terms of the LTIP, the filing of a notice of intent to exercise one's options is a "condition" to the exercise of such options. Because there is no other provision of the LTIP that indicates the intent of the parties different from the norm provided by Section 25 of the New York General Construction Law, impliedly or explicitly, we conclude the district court committed no error in holding that Fishoff gave timely notice for a November exercise.

### III. Coty's Discretion Under the LTIP

Under New York law, a covenant of good faith and fair dealing is implied in all contracts. *See Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (citations and internal quotation marks omitted). "Where the contract contemplates the exercise of discretion, this

9

pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995); *accord In re Kaplan*, 143 F.3d 807, 819 (3d Cir. 1998) (Courts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion "reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." (internal quotation marks omitted)). A breach of the duty of good faith and fair dealing is considered a breach of contract. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).

In this case, Coty does not argue that its decision to cut its share price by almost 50% in order to devalue Fishoff's options is consistent with the implied duty of good faith and fair dealing. Indeed, it is difficult to conceive of a set of facts under which Coty's seemingly arbitrary post hoc valuation, which was applied *only* to Fishoff and only *after* he exercised his options, would not be a clear violation of the duty of good faith and fair dealing; Coty's actions plainly denied Fishoff the fruits of the contract. Rather, Coty urges that the implied duty is of no consequence because the LTIP "expressly provides an unrestricted discretionary right" as codified in Section 3(b) of the LTIP. We disagree with the interpretation of the contract advanced by Coty.

"Discretion to modify or cancel an incentive . . . will not be implied if there exists no explicit contractual provisions assigning the employer absolute discretion to pay such compensation." *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225, 237 (S.D.N.Y. 2003); *Namad v. Salomon, Inc.*, 74 N.Y.2d 751, 753 (1989). While Section 3(b) gives Coty a considerable amount of discretion in making determinations about the "Plan" and "Awards" issued thereunder, it is

10

silent as to Coty's discretion to alter share value after an optionee has validly exercised his options. If nothing else, the fact that Coty initially issued a written confirmation of Fishoff's exercise that included a $58 Fair Market Value for the shares, indicates that Coty at one time also recognized this limitation on its discretion.

Moreover, the terms of the LTIP, Section 6(d)(ii), provide that once an optionee has made a valid exercise, Coty must make payment to the optionee based upon the Fair Market Value of the company's shares that was in place on the date the options exercise was made. *See* LTIP § 6(d)(ii) ("Upon any valid exercise . . . the respective Participant *shall* be entitled to receive . . . a payment in cash . . ." (emphasis added)). In this case, that payment was to be in an amount equal to the difference between the "Fair Market Value" of the company's shares "*as of* the Exercise Date" and the purchase price of the options—that is, the difference between the valuation in place on the date Fishoff exercised his options and their respective purchase prices. Once the exercise was processed and that difference was computed, Coty was required to make payment to Fishoff "as promptly as practicable." *See* LTIP § 6(d)(ii) ("The payment of cash shall be made as promptly as practicable after an exercise."). To the extent that any other part of the LTIP could be read to conflict with these strictures, Section 6(d)(ii) makes clear that it applies with full force and effect "notwithstanding" "[a]ny provision of the Plan or any Award Agreement to the contrary." Thus, once Fishoff's exercise was, by operation of law, a valid November exercise, he was entitled to be compensated at the $58 per share rate that all other November exercisers received.

11

**IV.    Sanctions**

Because Fishoff's initial complaint included a cause of action for violations of Section 10(b) of the Securities Exchange Act of 1934, pursuant to the terms of the Private Securities Litigation Reform Act ("PSLRA"), the district court was required at the close of litigation to enter findings on whether Fishoff's action violated Federal Rule of Civil Procedure 11.  *See* 15 U.S.C. § 78u-4(c)(1) (providing that at the end of any private securities action, the district court must "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)").   The district court concluded that Fishoff had not violated Rule 11, *see Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), and Coty appeals that finding.

We review the denial of sanctions for abuse of discretion and any underlying factual findings for clear error.  *Friends of Animals Inc. v. United States Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997).  The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable.  *See Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).  The operative question is whether the argument is frivolous, i.e., the legal position has "no chance of success," and there is "no reasonable argument to extend, modify or reverse the law as it stands."  *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (internal quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) ("The express congressional purpose of the PSLRA [sanctions] provision was to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of *frivolous* securities claims." (emphasis added)).

12

In this case, Fishoff argued before the district court, inter alia, that the options he was awarded were "securities" as that term is defined in the Securities Exchange Act of 1934. The district court concluded that Fishoff's "position was not without some support—albeit non-binding and unpersuasive." *Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2010 WL 305358, at *2 & n.18 (S.D.N.Y. Jan. 25, 2010) (noting that Fishoff cited a "host of cases" in support of his position). The district court further explained that, "while I found that Fishoff had failed to adequately plead scienter, this does not mean that Fishoff's claim had absolutely 'no chance' of success." *Id.* (footnotes omitted). We agree with the district court that Fishoff's arguments were non-frivolous; they were not foreclosed a priori by binding precedent even if they were unlikely to succeed, and Fishoff's position was not unsupported by case law even though the cases he cited were not binding on the court adjudicating his claims. We also agree with the district court that a party's failure to plead with the requisite particularity does not necessarily warrant sanctions. Accordingly, we conclude that the district court did not abuse its discretion in denying sanctions.

We have considered Appellant's remaining contentions, and for substantially the same reasons stated by the district court, we conclude that they are without merit.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

13