EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| María V. Irizarry Centeno (TS-10,355) Anissa M. Bonilla Irizarry (TS-18,907) | 2026 TSPR 41 218 DPR ___ |

Número del Caso: AB-2025-0232


Fecha:  21 de abril de 2026


Representantes legales de las promovidas:

    Lcdo. Virgilio Mainardi Peralta
    Lcdo. Luis M. García Tous
    Lcdo. Alfredo III López Garay


Materia: Conducta Profesional – Deber de actuar con competencia y diligencia tecnológica en todo momento, incluido validar el contenido generado mediante herramientas tecnológicas.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re:* | | |
| María V. Irizarry Centeno (10,355) | AB-2025-0232 | |
| Anissa M. Bonilla Irizarry (18,907) | | |

**El Juez Asociado señor Candelario López emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 21 de abril de 2026.

El presente caso trasciende la conducta individual de las promovidas y ofrece a este Tribunal la oportunidad de reiterar principios éticos fundamentales en un momento de transición normativa para la profesión legal. Si bien los hechos de autos se rigen por el Código de Ética Profesional vigente al momento de la conducta imputada a las licenciadas María V. Irizarry Centeno (licenciada Irizarry Centeno) y Anissa M. Bonilla Irizarry (licenciada Bonilla Irizarry) (en conjunto, promovidas), la situación aquí examinada pone de relieve retos contemporáneos asociados al ejercicio de la abogacía, particularmente en el contexto del uso de herramientas tecnológicas en la investigación y redacción jurídica.

En esta ocasión, nos corresponde ejercer nuestro poder disciplinario para apercibir a las promovidas por quebrantar los principios deontológicos que recogen los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. En virtud de los fundamentos que expondremos más adelante, se archiva la presente queja en contra de las promovidas, no sin antes apercibir a las licenciadas de

que en el futuro deben dar fiel cumplimiento a las Reglas de Conducta Profesional de Puerto Rico.

Veamos los elementos fácticos que dieron lugar a nuestro proceder.

I

La licenciada Irizarry Centeno fue admitida al ejercicio de la abogacía el 19 de enero de 1993 y al ejercicio de la notaría el 12 de enero de 1999. Por su parte, la licenciada Bonilla Irizarry fue admitida al ejercicio de la abogacía el 7 de febrero de 2012.

El presente proceso disciplinario surge como resultado de cierta *Resolución* emitida el 22 de agosto de 2025 por el Tribunal de Primera Instancia (TPI) en el caso *Fernando Betancourt Gómez v. Colegio de Profesionales de la Enfermería de Puerto Rico y otros,* SJ2023CV10615.[1] Mediante la misma, el foro primario trajo a nuestra atención la posible violación de la normativa ética por parte de las promovidas al haber utilizado herramientas tecnológicas sin la debida diligencia y supervisión, y haber hecho representaciones falsas al Tribunal a base de referencias inexistentes en las que se atribuyeron al Tribunal Supremo citas y determinaciones que nunca se han emitido.

En síntesis, en el referido caso, el 17 de julio de 2025, las promovidas, en representación de su cliente,

---

[1] El caso de referencia es un proceso de naturaleza laboral sobre despido injustificado, discrimen y represalias. El 9 de julio de 2025, las promovidas asumieron representación legal del codemandado, Sr. Tomás Alvarado Colón.

presentaron una *Moción en solicitud de desestimación*. En la misma, entre otras cosas, citaron *ad verbatim* varios casos que supuestamente pertenecían a la jurisprudencia de este Tribunal. En específico, usaron la siguiente cita que aparentaba ser obtenida de un caso titulado *Suárez v. CMI Caribe,* 180 DPR 367, 376 (2010): "la mera afiliación a una entidad no basta para imputar responsabilidad solidaria por sus decisiones. Es imprescindible la participación activa o conocimiento de los actos imputados". Del mismo modo, las promovidas citaron el caso *Otero-Burgos v. Inter Med. Supplies, Inc.,* con aparente citación de 137 DPR 841, 848 (1995), al cual le adjudicaron la siguiente cita expresa: "La relación de empleo que da base a la Ley Núm. 80 exige subordinación. Un contratista independiente, que ofrece servicios profesionales por su cuenta, no puede acogerse a la protección de dicha ley".

Asimismo, en la moción de desestimación que presentaron, las promovidas usaron un caso titulado *Pérez v. Horizon Lines,* el cual citaron bajo el 2020 TSPR 61, y le adjudicaron la siguiente cita: "La Ley 100 requiere como condición indispensable la existencia de una relación de trabajo. Sin esta, no procede el remedio". De la misma forma, las promovidas citaron el caso *Rosado v. ELA,* al cual atribuyeron la citación 2004 TSPR 13 y la siguiente cita: "La Ley 115 aplica únicamente a represalias contra empleados por sus denuncias. Sin un vínculo laboral, no hay remedio disponible".

De la misma manera, las promovidas citaron en su escrito el caso de *Colón v. Romero Barceló*, 112 DPR 573 (1982) y le atribuyeron la siguiente frase: "Para que surja responsabilidad bajo el Artículo 1802 es necesario un acto u omisión culpable, daños y nexo causal. La mera vinculación institucional no es suficiente". Por último, las promovidas indicaron que existe un caso titulado *Ramos Lozada v. E.L.A.,* con citación 174 DPR 650 (2008) y al cual atribuyeron la siguiente frase: "la inmunidad cualificada se reconoce a aquellos funcionarios que obran dentro de los márgenes de discreción que permite la ley y cuyas actuaciones no infringen derechos constitucionales claramente establecidos".

En respuesta a esta moción de desestimación, el 4 de agosto de 2025, el abogado de la parte querellante en el pleito presentó una *Oposición a "Moción en solicitud de desestimación (SUMAC #67) y solicitud de desglose y honorarios de abogado".* En la misma, entre otras cosas, advirtió al tribunal sobre el uso de citas inventadas y jurisprudencia inexistente por parte de las promovidas en la solicitud de desestimación. Asimismo, sostuvo que tal conducta ameritaba la imposición de sanciones y/o honorarios de abogado por temeridad.

Ante tales reclamos, el 5 de agosto de 2025, las promovidas presentaron una *Moción aclaratoria*, en la cual reconocieron que algunas citas incluidas en la moción de desestimación fueron erróneamente atribuidas "debido a un

error involuntario en la búsqueda y selección de la jurisprudencia". No obstante, las promovidas aclararon que este error no cambiaba la doctrina vigente y que no fue producto de dolo, mala fe o intención de engañar, sino que "responde a las limitaciones derivadas de la consulta de fuentes generales en internet".

Por otra parte, el 8 de agosto de 2025, las promovidas presentaron una *Moción informativa sobre verificación y actualización de citas jurisprudenciales*. En esta, las promovidas expresan que, en la actualidad, "la disponibilidad y proliferación de fuentes electrónicas de jurisprudencia, incluyendo bases de datos públicas, motores de búsqueda en internet y aplicaciones de inteligencia artificial, han impactado la forma en que se accede y utiliza la doctrina judicial", lo cual ha generado desafíos. Según indicaron las promovidas, estas revisaron las citas jurisprudenciales empleadas en la moción de desestimación. De este modo, presentaron un resumen de los fundamentos doctrinales y jurisprudenciales que fundamentan sus alegaciones, integrado con citas jurisprudenciales válidas.

En reacción a lo expuesto por las promovidas, el 11 de agosto de 2025, la parte querellante en el pleito presentó una *Respuesta a "Moción Aclaratoria" SUMAC #72 y "Moción Informativa" SUMAC # 73 y reiterando solicitud de desglose y sanciones por temeridad.* En la misma, reiteró que la moción de desestimación presentada por las

promovidas se sostuvo en citas jurisprudenciales inexistentes o falsamente atribuidas, lo cual constituye una conducta temeraria y éticamente reprochable. Además, argumentó que, aun cuando las promovidas admitieron errores parciales y luego intentaron suplir la doctrina auténtica, ello no subsana la falta ya cometida ni elimina sus consecuencias procesales y éticas. De igual forma, expuso que la introducción de autoridad inexistente no es un simple error subsanable, sino una violación a la Regla 9 de Procedimiento Civil y al Canon 35 del Código de Ética Profesional, sujeto a sanciones. De este modo, solicitó que se declaren improcedentes las mociones aclaratorias e informativas, se ordene el desglose de la moción de desestimación y se impongan honorarios por temeridad no menores de $5,000.

En atención a lo anterior, el 21 de agosto de 2025, las promovidas presentaron una *Contestación a moción solicitando sanciones*. En la misma, arguyeron que la moción solicitando sanciones se basa en errores ya corregidos oportunamente en el récord del caso y que no causaron perjuicio procesal ni retraso alguno. De igual forma, afirmaron que no existió intención dolosa, mala fe ni temeridad, requisitos indispensables para la imposición de sanciones. Señalaron que la corrección se realizó de inmediato y con transparencia. Por ello, solicitaron al tribunal que tome conocimiento de la corrección realizada,

determine la ausencia de mala fe y deniegue la moción de sanciones.

Así las cosas, el 22 de agosto de 2025, el TPI emitió la *Resolución* antes mencionada.[2] En esa *Resolución,* el tribunal realizó un recuento de las mociones presentadas y detalló las citas inexistentes utilizadas por las promovidas. Además, se hizo mención del Canon 35 del Código de Ética Profesional, y la Regla 1.19 de las nuevas Reglas de Conducta Profesional de Puerto Rico. Del mismo modo, a manera ilustrativa, se mencionó la Opinión Formal 512 del *Standing Committee on Ethics and Professional Responsibility* de la American Bar Association (ABA), emitida el 29 de julio de 2024 sobre *Generative Artificial Intelligence Tools.*

En su *Resolución,* el TPI determinó que independientemente de la utilidad de las herramientas tecnológicas existentes en la actualidad y los desafíos que estas puedan presentar, "debe ser una obligación ética y profesional de todos y todas las abogadas que ejercen la profesión en Puerto Rico revisar sus escritos y asegurarse que sus comparecencias ante los foros en los que ejercen sus labores no contengan información falsa, inexistente o alucinada por algún sistema tecnológico". Asimismo, el TPI concluyó que las actuaciones de las promovidas causaron perjuicio a la otra parte, alteraron el curso del litigio y retrasaron la solución definitiva del pleito. Por tal

---

[2] Véase *Resolución* del 22 de agosto de 2025, emitida por la Hon. Larissa N. Ortiz Modestti.

razón, al amparo de la Regla 9.3 de Procedimiento Civil, el TPI impuso una sanción total de $1,000 a las promovidas por causar dilaciones injustificadas en el manejo del caso.[3] Adicional, se ordenó la notificación de la *Resolución* a este Tribunal en aras de que se evalúe la conducta profesional de las promovidas.

Referido el asunto ante nuestra atención y acogido como una queja, luego de conceder dos (2) prórrogas de treinta (30) días cada una, el 30 de octubre de 2025, las promovidas presentaron en conjunto su contestación. En síntesis, argumentaron que no hay controversia respecto a que varias citas incluidas en una moción dispositiva suscrita por estas no estaban correctas. Sin embargo, sostuvieron que esta incorrección fue sobre la codificación o ficha de la fuente jurídica. Además, las promovidas indicaron que se equivocaron al entrecomillar como cita directa la referencia a algunas doctrinas, las cuales no correspondían a una transcripción literal del texto original. No obstante, las promovidas expresaron que tal incorrección no alteró ni tergiversó ningún elemento normativo en ninguna de las doctrinas a las que se hizo alusión incorrectamente entre comillas.

Por otra parte, en la misma contestación, las promovidas admitieron profundo arrepentimiento y

---

[3] Surge del expediente en el TPI que, el 3 de septiembre de 2025, las promovidas renunciaron a la representación legal de la parte codemandada, Sr. Tomás Alvarado Colón. De igual forma, según una *Moción informando pago de sanción*, presentada el 16 de septiembre de 2025, las promovidas demostraron haber cumplido con el pago de la sanción impuesta.

aseguraron que el texto de las citas incorrectas no expresa disparates, doctrinas fabricadas ni ordenamiento ficticio o inexistente. Asimismo, aclararon que su intención nunca fue inducir a error al tribunal, faltar al deber de honradez ni obtener ventaja indebida, y reiteraron que en todo momento actuaron de buena fe, movidas únicamente por el propósito de defender, conforme a sus capacidades, los derechos de su representado.

## II

### A.   Canon 18 de Ética Profesional

El Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, requiere que los y las profesionales del derecho rindan una labor idónea, competente, cuidadosa y diligente. *In re Hernández López*, 2025 TSPR 87, 216 DPR __ (2025); *In re Pérez Rojas*, 213 DPR 244, 256 (2023); *In re Lugo Quiñones I*, 206 DPR 1, 11 (2021). Los abogados tienen el deber de defender los intereses de su cliente empleando la mayor capacidad, lealtad, responsabilidad, efectividad y honradez. *In re Amill Acosta*, 181 DPR 934, 939 (2011). Ello significa que la profesión de la abogacía no se puede ejercer con indiferencia, desidia, despreocupación, inacción y displicencia en la tramitación de un caso. *In re Ramos Bahamundi*, 2025 TSPR 43, 216 DPR __ (2025); *In re Carrasquillo Bermúdez*, 203 DPR 847, 861 (2020).

Si el abogado o la abogada no puede prepararse y actuar como la profesión lo exige, no debe asumir la representación legal. *In re Bonhomme Meléndez*, 202 DPR

610, 623 (2019). Cuando se infringe el Canon 18, "el perjuicio directo lo padece la propia parte negligente no logrando la concreción de lo pretendido". *In re Nieves Nieves,* 181 DPR 25, 37-38 (2011), citando a R.L. Vigo, *Ética del abogado: conducta procesal indebida*, 2da ed., Buenos Aires, Ed. Abeledo-Perrot, 2003, pág. 103. Es decir, se afectan los intereses del cliente que el abogado negligente intenta defender. Es por esto que "[l]a ética profesional […] exige al abogado que conozca las normas jurídicas y actúe en consecuencia, y en la medida en que nos encontremos con una capacitación inadecuada o con una atención indebida a la causa encomendada, estaremos frente a una falta a aquella ética". Íd.

Asimismo, cabe destacar que el deber de competencia mencionado en el Canon 18 se circunscribe exclusivamente "al deber de poseer los conocimientos jurídicos necesarios para la tramitación adecuada de un caso o gestión profesional". *In re Radinson Pérez,* 204 DPR 522, 538 (2020), citando a S. Steidel Figueroa, *Ética para juristas: ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. Situm, 2016, Sec. 6.03, pág. 233. Por consiguiente, el deber de competencia "parece referirse al conocimiento que se tiene, o más bien, en cuán 'al día' está el abogado en el conocimiento del Derecho". Íd.

**B.    Canon 35 de Ética Profesional**

El Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35, expone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> **No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.** (Énfasis suplido).

Este canon establece el deber ético de ser sincero y honrado, lo que se consideran los pilares fundamentales de la profesión legal. *In re Medina Quintana*, 2025 TSPR 131, 216 DPR __ (2025). Reiteradamente, este Tribunal ha sancionado a profesionales del derecho por proveer información falsa u ocultar información que debe ser revelada a los tribunales, en violación a lo dispuesto en este canon. Íd.; *In re Ayala Oquendo I*, 2025 TSPR 9, 215 DPR __; *In re Jusino Torres*, 210 DPR 919, 933 (2022); *In re Valentín Custodio*, 187 DPR 529, 547 (2012).

Según hemos expuesto "este canon se incumple por el simple hecho de un abogado o una abogada faltar a la verdad, independientemente de las razones habidas para ello". *In re Ayala Oquendo I*, supra; *In re Ramos Bahamundi*, supra. Es innecesario probar el elemento deliberativo o la intención de defraudar o engañar para demostrar una infracción al Canon 35. *In re Joglar Castillo*, 210 DPR 956, 966-967 (2022). Esto se debe a que

el sistema judicial se erige sobre "la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales". *In re Nieves Nieves*, 181 DPR 25, 42 (2011).

Se infringe el referido Canon cuando se tergiversa la verdad en aras de inducir a error al juzgador. Canon 35 de Ética Profesional, *supra*. Esto, pues "[l]a profesión jurídica está predicada en la búsqueda y [la] defensa de la verdad". *In re Sierra Arce*, 192 DPR 140, 147 (2014). Permitir que la conducta de un abogado o de una abogada se desvíe de la sinceridad y honradez es inherentemente contrario al propósito de la profesión. Íd.

**C.   Canon 38 de Ética Profesional**

El Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, establece el deber de todo abogado de exaltar los valores principales de la profesión legal: el honor y la dignidad. *In re Soto Peña*, 213 DPR 663, 677 (2024). Por consiguiente, los miembros de la profesión legal están obligados a conducirse de tal forma que, con su actuar, enaltezcan la imagen de su profesión. *In re Rodríguez López*, 196 DPR 199, 208 (2016).

Todo letrado debe tener presente la función social que ejerce y la institución que representa, por lo que siempre debe proceder con un alto sentido de responsabilidad. *In re Cardona Estelritz,* 212 DPR 649, 667 (2023). Debido a que son el espejo en donde se refleja la

imagen de todo el andamiaje judicial, recalcamos que el Canon 38 del Código de Ética Profesional, *supra*, les ordena evitar hasta la apariencia de conducta impropia. *In re Soto Peña, supra*, pág. 678. Así habrán de conducirse los abogados, aunque ello conlleve sacrificios personales, pues la esperanza, el respeto y la confianza que la sociedad deposita en la institución de la justicia desmerece cuando la actuación de un letrado representa incorrección. Íd.

Por lo tanto, "[s]e entenderá que una conducta viola este [C]anon [38] cuando afecta las condiciones morales del abogado y hace que sea indigno de pertenecer a este foro". *In re Rodríguez López, supra*, pág. 208. Para justipreciar esto, se debe analizar si esa conducta realmente afecta las condiciones morales del abogado y es contraria a la dignidad y al honor de la profesión. *In re Reyes Coreano*, 190 DPR 739, 757-758 (2014).

### D.    Regla 9.1 de Procedimiento Civil

La Regla 9.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 9.1, dispone en parte lo siguiente:

> […] La firma del abogado o abogada o de la parte **equivale a certificar que** está hábil y disponible para cumplir con los señalamientos y las órdenes del tribunal, que **ha leído el escrito y que, de acuerdo con su mejor conocimiento, información y creencia, formada luego de una investigación razonable, dicho escrito está bien fundado en los hechos y respaldado por el derecho vigente,** y que no se ha presentado con el propósito de causar una injusticia, dilación u opresión o de aumentar el costo del litigio. […]
>
> **Si un escrito se firma en violación de esta regla el tribunal, a moción de parte o a iniciativa**

**propia, impondrá a la persona quien lo firmó, a la parte representada o a ambas, cualquier sanción conforme lo dispuesto en la Regla 9.3** de este apéndice, o podrá incluir una orden para pagar a la otra parte o partes una suma razonable en concepto de gastos con motivo de la presentación del escrito, incluso una cantidad razonable para honorarios de abogado o abogada. (Énfasis nuestro).

Recientemente, recalcamos que la Regla 9.1 de Procedimiento Civil, *supra*, "[i]mpone a quien firme el deber afirmativo de realizar una investigación razonable sobre los hechos y el derecho aplicable antes de presentar el escrito". *Pagán Rodríguez v. Pres, Cáms. Legs.*, 206 DPR 277, 289 (2021), citando a R. Hernández Colón, *Derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 206. Esta regla impone una seria obligación al abogado y va encaminada a exigir un mínimo de competencia y escrupulosidad.

Por ello, su incumplimiento puede ser sancionado económicamente o puede hasta producir la descalificación bajo la R. 9.3 de Procedimiento Civil o por violación a los Cánones de Ética Profesional con sanciones que puedan afectar hasta el ejercicio de la profesión. Hernández Colón, *op. cit.,* pág. 189. Por esta razón, de no cumplir con el deber de la Regla 9.1, *supra*, el tribunal tendrá discreción para imponer sanciones. Ahora bien, para determinar si el abogado o la parte cumplió con el mandato de la Regla 9.1 de Procedimiento Civil, *supra*, el tribunal utilizará el criterio de razonabilidad, atendiendo las circunstancias del momento. Íd.

**III**

Como mencionáramos anteriormente, el presente caso surge como consecuencia de un referido del TPI, luego de que las promovidas realizaran representaciones falsas al atribuir a este Tribunal citas y determinaciones que nunca se han emitido. En específico, las promovidas incluyeron en un escrito ante el foro primario citas inexistentes para fundamentar sus posturas en cuanto a una solicitud de desestimación. En la *Resolución* emitida por el TPI se advierte que las promovidas usaron herramientas tecnológicas para preparar su escrito sin la debida diligencia y supervisión.

Las mismas promovidas admitieron que algunas citas incluidas en el referido escrito fueron erróneamente atribuidas "debido a un error involuntario en la búsqueda y selección de la jurisprudencia", lo cual respondía a "limitaciones derivadas de la consulta de fuentes generales en internet". Asimismo, en su comparecencia ante este Tribunal, las promovidas argumentaron que no hay controversia respecto a que varias citas incluidas en una moción dispositiva suscrita por estas no estaban correctas. Además, indicaron que se equivocaron al entrecomillar como citas directas las referencias a algunas doctrinas, las cuales no correspondían a una transcripción literal del texto original.

Ciertamente, el Código de Ética Profesional destaca en su Canon 18, *supra*, que los profesionales del derecho

deben rendir una labor idónea, competente, cuidadosa y diligente.[4] En particular, el deber de competencia se circunscribe "al deber de poseer los conocimientos jurídicos necesarios para la tramitación adecuada de un caso o gestión profesional". *In re Radinson Pérez*, *supra,* pág. 538. Así pues, cuando un abogado demuestra no estar actualizado en su conocimiento en derecho, este infringe el deber de competencia requerido.

En este caso, si bien las promovidas alegaron que los errores surgieron como consecuencia del uso de fuentes electrónicas generales y herramientas tecnológicas, ello no las releva de su deber de competencia y diligencia al defender los intereses de su cliente. La mera presentación de citas jurisprudenciales inexistentes o incorrectamente atribuidas demuestra una falta de verificación mínima de las fuentes jurídicas utilizadas y una investigación jurídica deficiente, lo cual es incompatible con el estándar de competencia que exige la profesión. Advertimos que el deber de competencia no se satisface con la mera intención de argumentar conforme a derecho, sino que requiere un esfuerzo razonable y diligente para corroborar la corrección y autenticidad de las autoridades citadas.

Por otra parte, es forzoso concluir que la actuación de las promovidas de usar en sus escritos citas inexistentes resulta incompatible con el deber de

---

[4] La conducta de las promovidas es evaluada bajo el Código de Ética Profesional de 1970, según enmendado, 4 LPRA Ap. IX, toda vez que los hechos que motivaron la presente queja ocurrieron previo a la entrada en vigor de las nuevas Reglas de Conducta Profesional de Puerto Rico.

sinceridad y honradez plasmados en el Canon 35, *supra.* Ello pues sus actuaciones faltaron a la verdad objetiva y colocaron al foro primario en una posición susceptible de error al evaluar el derecho aplicable. El hecho de que las promovidas corrigieron posteriormente los errores, o de la explicación respecto a que estos errores surgieron a raíz del uso de fuentes electrónicas generales, no satisface la obligación ética que impone el Canon 35, *supra.* Por el contrario, el deber de sinceridad y honradez exige que las representaciones que se hagan al tribunal sean correctas al momento de su presentación.

Concluimos, además, que la conducta de las promovidas también infringió el deber impuesto por el Canon 38, *supra*, el cual exige a todo abogado y abogada exaltar el honor y la dignidad de la profesión legal. Como hemos indicado, las promovidas comparecieron ante el foro primario mediante un escrito que contenía múltiples citas jurisprudenciales inexistentes o incorrectamente atribuidas a este Tribunal, algunas de ellas presentadas como citas textuales. Esta actuación proyecta una imagen de descuido profesional incompatible con los valores de honor, dignidad y responsabilidad que se exigen en la profesión legal.

Como hemos advertido, la confianza que la sociedad deposita en la institución de la justicia desmerece cuando la actuación de un letrado representa incorrección. *In re Soto Peña, supra*, pág. 678. Por consiguiente, aun cuando

las promovidas alegaron que los errores fueron involuntarios y relacionados al uso de herramientas tecnológicas, el efecto de su conducta resulta incompatible con el deber de exaltar la imagen de la profesión legal.

No menos importante, el hecho de que las promovidas hayan firmado un escrito que contenía citas jurídicas inexistentes dio al traste con el propósito y la solemnidad que representa la firma de un abogado o abogada en nuestro ordenamiento legal. Recordemos que la Regla 9.1 de Procedimiento Civil, *supra,* "[i]mpone a quien firme el deber afirmativo de realizar una investigación razonable sobre los hechos y el derecho aplicable antes de presentar el escrito". *Pagán Rodríguez v. Pres, Cáms. Legs.*, *supra*, pág. 289.

Ahora bien, al momento de fijar las sanciones disciplinarias por violación al Código de Ética Profesional, este Tribunal debe considerar los siguientes factores: (1) la buena reputación del abogado o la abogada en la comunidad; (2) su historial previo; (3) si el caso que se examina constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación y el arrepentimiento sincero por las imputaciones; (5) la defensa frívola de su conducta; (6) si se trata de una conducta aislada; (7) el ánimo de lucro; (8) resarcimiento al cliente, y (9) cualquier otra consideración atenuante o

agravante aplicable a los hechos. *In re Hernández López, supra*. *In re Ayala Oquendo I*, *supra*, pág. 14.

En el caso ante nos, es menester destacar que surge de los expedientes de las promovidas que estas, previo a la presente queja, no habían enfrentado ningún proceso disciplinario. Por otro lado, luego de haber presentado el escrito con las citas jurídicas incorrectas e inexistentes,[5] las promovidas presentaron una *Moción informativa sobre verificación y actualización de citas jurisprudenciales*, en la cual presentaron un resumen de los fundamentos doctrinales y jurisprudenciales que fundamentan sus alegaciones, integrado con citas jurisprudenciales válidas.

Asimismo, resulta relevante señalar que el TPI impuso una sanción de $1,000 a las promovidas al amparo de la Regla 9.3 de Procedimiento Civil, por causar dilaciones injustificadas en el manejo del caso. Esta sanción fue satisfecha por las promovidas sin dilaciones. Igualmente, vale la pena resaltar que las promovidas renunciaron a la representación legal de la parte codemandada en el pleito ante el TPI. Entre sus alegaciones en la contestación a la queja, las promovidas expresaron sus más sinceras disculpas por la forma en que estas expresaron sus argumentaciones, y afirmaron que lo ocurrido constituye un

---

[5] El 4 de agosto de 2025, la parte querellante en el caso ante el TPI advirtió al Tribunal sobre las citas y jurisprudencia inexistente. Al día siguiente, el 5 de agosto de 2025, las promovidas presentaron una *Moción aclaratoria*, en la cual reconocieron que algunas citas incluidas en la moción de desestimación fueron erróneamente atribuidas.

hecho aislado, ajeno a su trayectoria profesional que no se volverá a repetir.

Así pues, consideradas las circunstancias atenuantes, y en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que apercibamos a las promovidas, a fin de que en el futuro procuren comportarse conforme a la normativa ética aplicable.

Por último, es pertinente enfatizar que, aunque los hechos de autos se rigen por el Código de Ética Profesional vigente al momento de la conducta imputada a las promovidas, este caso ilustra con claridad la pertinencia y necesidad de las nuevas Reglas de Conducta Profesional de Puerto Rico, aprobadas por este Tribunal para atender los retos contemporáneos del ejercicio de la abogacía y la notaría.[6] En particular, la Regla 1.19, que reconoce expresamente el deber de competencia y diligencia tecnológica, dispone que las personas que ejercen la profesión legal deben "adquirir las destrezas necesarias y mantener un conocimiento razonable sobre los desarrollos tecnológicos que puedan impactar la práctica del Derecho y la función notarial. Esto incluye el deber de utilizar la tecnología de manera diligente y con conocimiento de sus beneficios y riesgos, a fin de prestar una representación legal o ejercer la función notarial de manera competente y efectiva".

---

[6] Las Reglas de Conducta Profesional de Puerto Rico fueron aprobadas a través de la *Resolución* del 17 de junio de 2025, *In re Rs. Conducta Prof. PR*, 2025 TSPR 64, 216 DPR __ (2025), y entraron en vigor el 1 de enero de 2026.

Entre los comentarios de esta Regla 1.19, *supra,* es imperativo que destaquemos la definición de diligencia tecnológica, como aquella que "implica utilizar las herramientas o las soluciones tecnológicas de forma oportuna, responsable y sin causar dilaciones o perjuicios indebidos". A modo de ejemplo, el comentario sobre diligencia tecnológica indica que presentar documentos sin validar el contenido generado mediante herramientas tecnológicas puede constituir una falta de diligencia, aun cuando se tenga competencia tecnológica.

De la misma forma, otro de los comentarios de la Regla 1.19, introduce la definición de herramientas tecnológicas y de la inteligencia artificial. Además, advierte el comentario que:

> [C]uando se utilicen herramientas tecnológicas complejas, quienes ejercen la profesión legal deben contar con un entendimiento razonable de su funcionamiento o procurarlo mediante asesoramiento especializado. Las herramientas tecnológicas, como la inteligencia artificial y otros sistemas avanzados de procesamiento de información, pueden ser útiles para asistir en el análisis jurídico, la redacción de documentos o la organización de información. Sin embargo, no deben sustituir el criterio profesional de quien ejerce la abogacía o la notaría. **Todo contenido generado por medios tecnológicos debe revisarse cuidadosamente, especialmente si se trata de documentos presentados ante un tribunal, para garantizar su veracidad, pertinencia y corrección legal.** (Énfasis nuestro).

Estamos convencidos que las herramientas tecnológicas son parte esencial en la práctica de la abogacía, por lo que todo miembro de la profesión que las utilice deberá actuar conforme al deber de competencia y diligencia

tecnológica plasmado en las nuevas Reglas de Conducta Profesional de Puerto Rico.

**IV**

Por los fundamentos previamente expuestos en esta Opinión *Per Curiam*, luego de evaluar la totalidad de las circunstancias y en virtud de nuestro poder inherente de reglamentar la profesión legal, procede apercibir a las promovidas respecto a que, de incurrir en conducta antiética ulterior, se podrían exponer a sanciones disciplinarias más severas, entre ellas, la suspensión de la práctica de la profesión. Atendido el asunto, ordenamos el archivo de la Queja de epígrafe.

Advertimos a la clase togada sobre su deber de actuar con competencia y diligencia tecnológica en todo momento, lo cual incluye el deber de validar el contenido generado mediante herramientas tecnológicas. Faltar a este deber podría conllevar sanciones disciplinarias severas.

Notifíquese a las licenciadas Irizarry Centeno y Bonilla Irizarry esta *Opinión Per Curiam* y *Sentencia*.

Se dictará sentencia en conformidad.

Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

María V. Irizarry Centeno

Anissa M. Bonilla Irizarry

AB-2025-0232

Opinión de conformidad emitida por la Jueza Asociada Rivera Pérez a la que se une el Juez Asociado señor Estrella Martínez

En San Juan, Puerto Rico, a 21 de abril de 2026.

Todo proceso judicial tiene como finalidad la búsqueda de la verdad. *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363(1999). Bajo este contexto, la verdad no surge de la retórica sin sustento o de textos atribuidos sin fundamento. Más bien, resulta de hechos reales que generan controversias justiciables examinadas rigurosamente a la luz de *normas auténticas* que emanan de la autoridad competente, ya sea este Alto foro o la Legislatura.

El precedente judicial es, por ello, el producto del ejercicio de la jurisdicción de los tribunales sobre hechos genuinos adjudicados en el proceso adversativo. Solo después de haberse atravesado ese proceso es que adquiere rango de "derecho". Por consiguiente, solo podemos llamarle *jurisprudencia* a aquella que interpreta y aplica la ley a casos concretos, llena lagunas cuando las hay, y armoniza las disposiciones de ley que estén o que parezcan estar en

conflicto. *Collazo Cartagena v. Hernández Colón*, 103 DPR 870 (1975).

En armonía con lo anterior, cada miembro de la clase togada es una extensión básica de los tribunales. *In re Cardona Álvarez*, 116 DPR 895 (1986). Ello presupone una comprensión inequívoca de la misión fundamental pública que ejerce como coprotagonista en la administración e impartición de justicia dentro de una comunidad democrática fundada en el imperio de la ley. Íd. Naturalmente, lo anterior conlleva **la obligación de promover la búsqueda de la verdad en su justo cauce, actuar con respeto a los tribunales, y preservar y mantener inmaculada la imagen de la justicia.** Íd. Incluso, hemos dicho que la verdad es *atributo inseparable* de la abogacía y, sin ella, no podría justificarse su existencia. *In re Joglar Castillo*, 210 DPR 956 (2022); *In re Ramos Sáenz*, 205 DPR 1089 (2020).

Dicho eso, la incorporación de herramientas de inteligencia artificial a la práctica jurídica no altera, ni puede alterar, la misión fundamental de la abogacía.[1] La tecnología puede asistir a la búsqueda de la verdad, mas no puede distorsionarla ni desvirtuarla. Así pues, **la abogacía debe subordinar el uso de herramientas tecnológicas al**

---

[1] Al presente, el concepto inteligencia artificial se refiere al "campo de la informática que utiliza algoritmos para imitar el razonamiento humano y generar predicciones, recomendaciones o contenido en atención a las bases de datos y los objetivos establecidos por las personas que desarrollan y operan la herramienta". Comentario a la Regla 1.19 de las Reglas de Conducta Profesional de Puerto Rico, Resolución ER-2025-02 del 17 de junio de 2025.

**propósito superior de depurar la verdad conforme al derecho vigente.**

En contraste, quien invoca precedentes inexistentes o tergiversa la autoridad, no procura la verdad ni la justicia, sino una ventaja indebida incompatible con la dignidad de la profesión y con la integridad del proceso adjudicativo. En reiteradas ocasiones hemos insistido en que *los procesos judiciales no son competencias en las cuales ha de prevalecer el más listo*. *Pueblo v. Ortiz, Rodríguez*, *supra*. Así pues, la tarea de la abogacía no es prevalecer a toda costa. Por el contrario, como funcionarios del tribunal y partícipes esenciales de la administración de la justicia, los abogados y las abogadas deben procurar velar por la integridad del proceso y la protección de los derechos de su cliente **mediante la búsqueda incansable de la verdad.** Lo anterior acarrea, necesariamente, que, en tiempos en que la inteligencia artificial genera textos con apariencia de autoridad, nos aferremos con mayor rigor al compromiso con el descubrimiento de la verdad.

Con todo, en la Opinión que hoy emitimos se advierte que, *[l]a mera presentación de citas jurisprudenciales inexistentes o incorrectamente atribuidas demuestra una falta de verificación mínima de las fuentes jurídicas utilizadas y una investigación jurídica deficiente, […] es incompatible con el estándar de competencia que exige la profesión.* A su vez, reconocemos que el mal manejo de la inteligencia artificial que conduce a la presentación de

citas inexistentes, tergiversaciones del derecho o afirmaciones carentes de base legal, puede constituir conducta sancionable conforme a los Cánones de Ética Profesional vigentes al momento de los hechos, la Regla 9.1 de Procedimiento Civil, 32 LPRA Ap. V, y las Reglas de Conducta Profesional de Puerto Rico, Resolución ER-2025-02 del 17 de junio de 2025. Lo anterior, no porque la tecnología sea intrínsecamente reprochable, sino porque la sustitución del derecho real por uno ficticio distorsiona el proceso deliberativo, dilata innecesariamente los procedimientos y erosiona la confianza pública en la sana administración de la justicia.

Dicho esto, este caso, por ser el primero de su naturaleza en nuestra jurisdicción, nos convoca a reconocer que la práctica jurídica enfrenta una etapa histórica de transformación acelerada. Ante dicha realidad, emito la presente Opinión de conformidad a los fines de: (1) matizar qué constituye conducta sancionable a raíz del mal uso y manejo de las herramientas de la inteligencia artificial;(2) ampliar los deberes ético-profesionales que levanta o puede levantar dicha conducta y; (3) examinar el tratamiento que algunos tribunales federales le han dado a situaciones análogas. Esto último servirá para el doble propósito de: (a) sustentar la conclusión de que, bajo las circunstancias particulares de este caso, no se justifica imponer una sanción ética; y (b) extender la discusión sobre qué criterios se pueden tomar en consideración al sancionar a un

abogado o abogada que incurra en este tipo de práctica. Veamos.

## I

No hace falta ir *in extenso* sobre los hechos que dieron lugar a este caso. Sin embargo, es meritorio reproducir aquellos medulares al propósito de delimitar qué constituye conducta sancionable, cuando se presenta un escrito ante el tribunal generado con la asistencia de una herramienta de inteligencia artificial. A saber, en la *Moción en solicitud de desestimación* del 17 de julio de 2025, firmada por las Lcdas. María V. Irizarry Centeno y Anissa Michelle Bonilla Irizarry, se incluyeron los siguientes fundamentos en apoyo de su petitorio:

> En *Suárez v. CMI Caribe*, 180 D.P.R. 367, 376 (2010), el Tribunal recalcó que "la mera afiliación a una entidad no basta para imputar responsabilidad solidaria por sus decisiones. Es imprescindible la participación activa o conocimiento directo de los actos imputados.";
>
> […]
>
> Véase *Otero-Burgos v. Inter Med. Supplies, Inc.*, 137 D.P.R. 841, 848 (1995). En dicho caso el Tribunal Supremo expresó: "La relación de empleo que da base a la Ley Núm. 80 exige subordinación. Un contratista independiente, que ofrece servicios profesionales por su cuenta, no puede acogerse a la protección de dicha ley.";
>
> […]
>
> En *Pérez v. Horizon Lines*, 2020 TSPR 61, el Tribunal Supremo reiteró: "La Ley 100 requiere como condición indispensable la existencia de una relación de trabajo. Sin esta, no procede el remedio.". Similarmente, en *Rosado v. ELA*, 2004 TSPR 13, se estableció que: "La Ley 115 aplica únicamente a represalias contra empleados por sus denuncias. Sin un vínculo laboral, no hay remedio disponible.";
> […]
>
> En *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982), el Tribunal expresó: "Para que surja responsabilidad bajo el Artículo 1802 es necesario un acto u omisión culpable, daños y nexo causal. La mera vinculación institucional no es suficiente.";
>
> […]

Así lo ha reiterado el Tribunal Supremo de Puerto Rico en *Ramos Lozada v. E.L.A.*, 174 D.P.R. 650 (2008), donde sostuvo que "[l]a inmunidad cualificada se reconoce a aquellos funcionarios que obran dentro de los márgenes de discreción que permite la ley y cuyas actuaciones no infringen derechos constitucionales claramente establecidos["].

Conforme surge, las promovidas incluyeron en su escrito múltiples citas expresas atribuidas a decisiones específicas de este Tribunal, acompañadas de números de tomos y páginas que daban la apariencia de precisión y autenticidad. No obstante, tales citas no constan en los casos invocados, ya sea porque el nombre del caso o cita no existe, o no coincide con la decisión citada, que las páginas señaladas corresponden a pasajes distintos o inexistentes, o que la decisión incluida trata materias ajenas a la proposición atribuida. Por lo tanto, no se trata aquí de una interpretación discutible o expansiva del derecho, tampoco de una analogía jurídica amplia, propias del debate adversativo. Tampoco supone una mera aseveración incorrecta, o del uso de una licencia "editorial" o del silogismo, **sino de la atribución textual a esta Curia de pronunciamientos que no constan en nuestras opiniones.**

Patrones de conducta similares al antes descrito han sido objeto de análisis. Véase E. R. Desbien, *Comment, With Great Power Comes Great Responsibility: Court Sanctions For Misuse Of Genai*, 38 J. Am. Acad. Matrim. Law. 211. Al examinar jurisprudencia a lo largo de los Estados Unidos se concluyó que la forma más común en que los tribunales han presenciado el mal uso de la inteligencia artificial generativa es cuando un litigante somete un documento con

casos y proposiciones falsas. Íd. Sobre dicho asunto, el

artículo precisó lo siguiente:

> More than two-thirds of all cases that were analyzed for
> this comment and address the use or misuse of GenAI involve
> circumstances where a litigant has cited at least one non-
> existent case. When this issue arises, more often than not,
> the document contains several fake case citations. **In some
> situations, a citation contains a real case name or reporter
> citation, but the remaining portion of the citation is
> incorrect.** For example, in *Ruggierlo, Velardo, Burke, Reizen
> & Fox, P.C. v. Lancaster*, the defendant's objections
> contained what the court labeled a "mutant citation", a
> blend of an existing case name and an existing but inaccurate
> reporter citation.
>
> **Even if a filing does not contain non-existent cases, it may
> contain false propositions. This often occurs when the
> litigant cites non-existent quotes or asserts that a case
> or statute stands for a proposition that could not be
> reasonably inferred from that case.** Regardless of the type
> of inaccuracy, the citations appear accurate at first
> glance, since the model can generate citations in Bluebook
> format with convincingly accurate names and reporter
> citations. Only upon further investigation would a reader
> discover the inaccuracy. (Negrilla suplida). Íd., págs. 219-
> 220.

Sobre ese particular, *Mata v. Avianca, Inc.*, 678 F.Supp.

3d 443 (2023), constituye el primer caso donde se analizó

extensamente el uso de inteligencia artificial generativa

para producir citas ficticias y donde se impusieron sanciones

detalladas por el mal uso de ChatGPT en un escrito judicial.[2]

En lo concerniente a la conducta sancionable específica, el

Tribunal de Distrito para el Distrito Sur de Nueva York

sostuvo que, bajo la Regla 11 de las Reglas de Procedimiento

---

[2] En cuanto a los hechos de dicho caso, abogados fueron sancionados por usar ChatGPT, herramienta de inteligencia artificial que fabricó casos citados en un escrito presentado ante un foro judicial. Particularmente, el Tribunal de Distrito para el Distrito Sur de Nueva York examinó una oposición a solicitud de desestimación donde se citaron decisiones inexistentes y generadas por la inteligencia artificial. Dicho foro concluyó que tal conducta ameritaba sanciones bajo la Regla 11 de las Reglas de Procedimiento Civil Federal, Fed. R. Civ. P. 11, análoga a nuestra Regla 9.1, *supra*, por dos razones principales. Primero, los abogados no realizaron una investigación razonable antes de someter el escrito y, segundo, presentaron como derecho vigente decisiones que nunca fueron emitidas por tribunal alguno, conducta que catalogó como **abuso del sistema adversativo.**

Civil, Fed. R. Civ. P. 11, el tribunal estaba facultado para sancionar a un abogado por tergiversar los hechos o por presentar argumentos legales frívolos. Consideró que un argumento era frívolo y, por lo tanto, sancionable, cuando equivale a un abuso del sistema adversativo. Las meras afirmaciones jurídicas no son sancionables bajo la Regla 11, *supra*. En palabras del propio tribunal:

> [t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." Fishoff v. Coty Inc., 634 F.3d 647, 654 (2d Cir. 2011). A legal contention is frivolous because it has "no chance of success" and there "is no reasonable argument to extend, modify or reverse the law as it stands." Id. (quotation marks omitted). [The filing of papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" that is subject to Rule 11 sanction. A fake opinion is not "existing law" and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system. Salovaara, 222 F.3d at 34. (Negrilla suplida). Íd.

A tono con lo expuesto, el que una teoría jurídica sea improbable o remota no la convierte automáticamente en sancionable. El ejercicio del derecho permite o incluso a veces exige, argumentar cercano a los márgenes del ordenamiento para proponer cambios o extensiones razonables. En cambio, conforme surge del caso precitado, se incurre en frivolidad al invocar precedentes imaginarios para persuadir al foro adjudicador o contradecir a la parte adversa.

A mi juicio, esa práctica introduce en el proceso adjudicativo, un derecho inexistente o materialmente alterado, confiriéndole a la argumentación una **apariencia de autoridad que no posee**. Más bien, nos encontramos ante una **autoridad "alucinada"** producto de la maquinación de un

algoritmo que usa inferencias lógicas para predecir palabras dentro del contexto que le es encomendado. Ese proceso no surge de un pronunciamiento emitido por esta Curia en el ejercicio de un acto jurisdiccional real y verificable. Como se indicó en la introducción, la fuerza normativa de la jurisprudencia descansa en que el pronunciamiento sea producto de una controversia justiciable sustentada en hechos reales y ventilada mediante el proceso adversativo. Solo en ese contexto, la norma jurisprudencial cobra vida; fuera de él, **aun cuando aparente ser precedente, no constituye derecho vigente, sino texto carente de autoridad.**

En suma, la inclusión de citas inexistentes o tergiversadas atribuidas a decisiones de este Tribunal constituye conducta sancionable, no por la adopción de argumentos novedosos o interpretaciones extensivas del derecho, sino por presentar como precedente vigente pronunciamientos que este Tribunal nunca emitió. Ello entorpece la función adjudicativa, obliga al foro y a la parte adversa a desmentir derecho ficticio y erosiona la confianza en la administración de la justicia. Por consiguiente, además de las sanciones contempladas en nuestras Reglas de Procedimiento Civil, *supra*, también puede justificarse la imposición de medidas disciplinarias adicionales.

## II

La imposición de medidas disciplinarias presupone la transgresión de un deber ético profesional identificable. En

la etapa actual, marcada por la proliferación del uso de herramientas de inteligencia artificial en la práctica jurídica puertorriqueña, ostentamos una oportunidad única para orientar sobre los deberes éticos que acompañan su utilización. Así, corresponde delimitar, sin ánimo taxativo, los deberes ético-profesionales que se activan cuando se utilizan estas herramientas en el ejercicio de la abogacía y la notaría.

Como punto de partida, la Regla 1.19 de las Reglas de Conducta Profesional, *supra*, introduce los conceptos de "**competencia y diligencia tecnológica**". A pesar de que los deberes *generales* de competencia y diligencia están regulados por las Reglas 1.1 y 1.3, *supra*, respectivamente, entendimos necesario regular de manera *específica* los aspectos éticos del uso de la inteligencia artificial.

Aunque ambos conceptos están inexorablemente atados, podemos distinguir el deber de competencia tecnológica como aquel que requiere que, quienes ejerzan la profesión legal, adquieran las *destrezas necesarias* y mantengan un *conocimiento razonable sobre los desarrollos tecnológicos que puedan impactar la práctica del Derecho y la función notarial.*

Los comentarios a dicha Regla, los cuales se encuentran sustentados en la Opinión Formal n. 512 de la ABA (2024), precisan que la **competencia tecnológica implica comprender *razonablemente* las capacidades, beneficios, limitaciones y**

**riesgos de las herramientas utilizadas,[3] verificar la precisión de sus resultados, y mantener siempre un juicio profesional independiente.** No se exige que la abogacía sea experta en el uso y desarrollo de cualquier tecnología, pero sí que actúe con razonabilidad a la luz de las circunstancias, su experiencia profesional, su área de práctica, entre otros factores. Íd.

De otra parte, es esencial resaltar que, aun cuando el abogado o la abogada posea competencia tecnológica básica, debe ser complementada con el deber de *diligencia tecnológica*, también recogido en la Regla 1.19, *supra*. Véase Comentario a la Regla 1.19 de las Reglas de Conducta Profesional, *supra*. Según nos adelanta su propia denominación, la diligencia tecnológica **implica utilizar la tecnología con diligencia, pero también con conciencia de sus beneficios y riesgos, a fin de brindar una representación competente y efectiva.** Así pues, exige el uso oportuno y responsable de dichas herramientas, de modo que no entorpezca el curso de los procedimientos ni ocasione perjuicios indebidos.

---

[3] A modo ilustrativo, el abogado o abogada debe estar consciente de que las herramientas de inteligencia artificial no son infalibles y que sus resultados pueden verse afectados por sesgos y prejuicios algorítmicos inherentes a los datos con los que fueron entrenadas. Véase Francesca Lagioia et al., *Algorithmic Fairness Through Group Parities? The Case of COMPAS-SAPMOC*, AI & Soc'y 5 (2022), https://doi.org/10.1007/s00146-022-01441-y. Asimismo, debe conocer que, ante lagunas de información, estos sistemas pueden generar contenido ficticio o inexacto, conocido como *alucinación*, con el propósito de generar una respuesta coherente. Véase Opinión Formal ABA n. 512 (2024); Dávila Rivera J.E., *La Interacción entre la Ética Profesional y la Inteligencia Artificial a la Luz de la Regla 1.19 De Conducta Profesional de Puerto Rico,* 6 Rev. Asociación Abogados P.R. 125. Del mismo modo, su utilización conlleva riesgos relacionados con la posible divulgación o exposición de información confidencial. Íd.

A su vez, una interpretación de la Regla 1.19, *supra*, es congruente con el estándar del abogado diligente y razonable en la verificación de sus resultados. Es decir, le incumbe al abogado o abogada el deber de **validar el contenido generado por dichas herramientas, incluyendo la exactitud de las citas, presentado ante el tribunal**. Lo contrario, aunque haya sido preparado por la inteligencia artificial, puede constituir falta de diligencia profesional. La razón es la siguiente: aun cuando el abogado o abogada comprenda el funcionamiento de los modelos de lenguaje a gran escala, "large language models" o LLM's,[4] el resultado depende sustancialmente de la instrucción o "prompt" que se les proporcione. *In re Jackson Hosp. & Clinic, Inc.*, 2025 WL 3251167, (Bankr. M.D. Ala. 2025). Ello, a su vez, depende de que el abogado o abogada posea un conocimiento fundamental del asunto jurídico de que se trate. Íd. Por lo tanto, un "prompt" basado en una premisa incorrecta sobre el derecho, o influida por un sesgo a favor de un resultado particular, puede conducir al profesional del derecho aún más lejos, no solo de cualquier autoridad jurídica real, sino también de

---

[4] Los LLM's son un tipo de inteligencia artificial generativa. Su funcionamiento fue precisado en *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283 (S.D.N.Y. 2025) como sigue: "[a]n LLM can receive text prompts as inputs and generate natural language responses as outputs, which result from the LLM's prediction of the most likely string of text to follow the inputted string of text based on its training on billions of written works".

cualquier argumento jurídico plausible que sustente su posición.[5] Íd.

Por tal razón, el abogado es el responsable de asegurar la exactitud de los escritos que somete al tribunal. En efecto, la inteligencia artificial generativa, sin conocimiento jurídico suficiente sobre la controversia o sin la guía de "un abogado de probada competencia", no constituye un atajo seguro en la preparación de documentos legales.[6] Íd.

Además, el deber de diligencia en la revisión de los resultados generados por la inteligencia artificial, no se agota al momento de someter un escrito ante el tribunal, sino que continúa cuando el abogado reafirma o defiende las posiciones allí contenidas. Véase *Mata v. Avianca*, *supra*. Así, si posteriormente adviene en conocimiento de que una cita o precedente es falso, inexistente o incorrecto, corresponde corregirlo sin dilación. Íd.

En fin, aunque la inteligencia artificial puede constituir una herramienta útil en la práctica jurídica,

---

[5] El texto original lee como sigue:
    if the attorney understands how large language models function, the output of a large language model depends heavily on the prompt, which in turn requires the attorney to have a foundational understanding of the legal issue at hand. In other words, a prompt based on an incorrect assumption about the law – or a bias toward a particular result – may steer the attorney further away from not only any actual legal authority but also any plausible legal arguments supporting the attorney's position. *In re Jackson Hosp. & Clinic, Inc.*, 2025 WL 3251167, (Bankr. M.D. Ala. 2025).

[6] El texto traducido en el cuerpo es el siguiente: "*Generative artificial intelligence, without foundational knowledge of the legal matter at hand or the guidance of 'a lawyer of established competence,' is not a safe shortcut*". Íd.

nunca sustituye el juicio profesional del abogado. Véase *Mata v. Avianca*, *supra*. Por lo tanto, **la competencia y diligencia tecnológica conllevan una supervisión humana rigurosa, continua e indelegable de todo contenido generado mediante herramientas tecnológicas e inteligencia artificial**.

## III

Delimitada de esta forma la conducta sancionable y los deberes ético profesionales medulares a la controversia, conviene examinar cómo otros tribunales en los Estados Unidos han atendido situaciones análogas y qué criterios han considerado al momento de imponer sanciones. Ello, con el fin de precisar por qué, a pesar de que las promovidas incurrieron en conducta sancionable, no procede una sanción ética.

A medida que los tribunales han comenzado a enfrentar controversias relacionadas con el uso y el manejo indebido de herramientas de inteligencia artificial generativa, las decisiones que han impuesto sanciones han reflejado enfoques diversos. E. R. Desbien, *supra*. Algunos han optado por restringir o desalentar el uso de estas tecnologías en los procesos judiciales, mientras que otros han reconocido su utilidad siempre que se use de manera competente y responsable. Íd. De igual forma, cuando un abogado hace uso indebido de las referidas herramientas, el marco jurídico y las sanciones han variado entre jurisdicciones. Íd.

Ahora bien, en los primeros casos del 2023 al 2025, los tribunales impusieron principalmente sanciones procesales bajo la Regla 11 de Procedimiento Civil Federal, *supra*, o bajo el poder inherente del tribunal. Estas variaron desde sanciones monetarias, órdenes de mostrar causa, y otras medidas correctivas. Así pues, la tendencia predominante ha sido adoptar un enfoque correctivo y preventivo antes que punitivo. E. R. Desbien, *supra.*

Por ejemplo, en *Mata v. Avianca*, *supra*, el tribunal les impuso a los abogados una sanción de $5,000. Las expresiones de dicho Foro fueron las siguientes: *[t]he Court concludes that a penalty of $5,000 paid into the Registry of the Court **is sufficient but not more than necessary to advance the goals of specific and general deterrence**.* (Negrilla suplida). Íd. Además, ordenó medidas correctivas como notificar la Opinión a cada juez correlacionado con algún precedente inexistente citado en el escrito.

Otro caso donde un tribunal favoreció este enfoque fue *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341 (E.D. Okla. 2025). Sobre el objetivo al sancionar al abogado, el tribunal manifestó lo siguiente:

> **The Court has imposed sanctions to restore, not to ruin. The aim of this ruling is not punishment for its own sake, but the reaffirmation of professional honor.**
>
> All counsel have appeared, accepted responsibility, and sought mercy. **The Court has answered with proportion, acknowledging their contrition while ensuring accountability endures.** The combination of public reprimand, restitution, and monetary penalty satisfies the Rule 11 standard of deterrence and **reaffirms that the practice of law is an act of trust.** (Negrilla suplida). Íd.

Asimismo, en *Gauthier v. Goodyear Tire & Rubber Co.*, 2024 WL 4882651 (E.D. Tex. 2024), el tribunal, tras concluir que el abogado presentó un escrito que contenía citas inexistentes sin haber verificado su validez, ordenó pagar $2,000 como sanción. Además, le ordenó tomar cursos de educación jurídica continua en el tema de inteligencia artificial generativa y someter copia de la orden al demandante.

El denominador común de esta progenie de casos es que,[7] aun cuando los tribunales han considerado la conducta incompatible con los deberes básicos de diligencia, las medidas iniciales han sido de naturaleza procesal, como sanciones monetarias y medidas correctivas, dirigidas a proteger la integridad del proceso judicial y a reafirmar los deberes profesionales que rigen el ejercicio de la abogacía. En ese sentido, la imposición de una sanción monetaria de carácter procesal en el presente caso, tal como hizo el foro primario, se alinea con la respuesta adoptada por otros tribunales cuando han enfrentado por primera vez esta controversia. Sin embargo, el resultado al que arribamos

---

[7] Véase, también: *Iovino v. Michael Stapleton Assocs.*, 2024 WL 3520170, (W.D.Va. 2024)(orden para mostrar causa y advertencia); *Dukuray v. Experian Info. Sols.,* 2024 WL 3812259 (S.D.N.Y. 2024)(el tribunal no sancionó pero incluyó la siguiente advertencia: *"[p]laintiff is hereby advised that any further filings with citations to nonexistent cases may result in sanctions, such as her submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed.")*; *Mid Cent. Operating Engin'rs Health & Welfare Fund v. HoosierVac, LLC,* 2025 WL 5742334 (S.D. Ind. 2025) (sanción monetaria); *Kruse v. Karlen*, 692 S.W.3d 43 (Mo. Ct. App. 2024)($10,000 en honorarios de abogado como sanción); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489 (D. Wyo. 2025)(sanción monetaria); *Bunce v. Visual Tech. Innovations, Inc.*, 2025 WL 662398 (E.D. Pa. 2025)(sanción monetaria y educación jurídica continua).

en este caso no debe interpretarse como una señal de permisividad, pues comportamientos de esta naturaleza no serán tolerados.

Por último, considero que los siguientes parámetros son útiles al evaluar si la inclusión de citas inexistentes, alteradas o materialmente tergiversadas en un escrito jurídico ameritan una sanción disciplinaria: **(1) materialidad de la cita** (si sostiene una propuesta central al argumento jurídico, influye sobre el resultado potencial del caso o pretende resolver una controversia sustantiva); **(2) apariencia de precisión y grado de falsedad** (si se presentó la cita como textual, con comillas y referencia específica de tomo y página, *vis a vis* si la cita parafraseó razonable una norma vigente, si constituyó un error tipográfico aislado o cita incompleta); **(3) patrón o reiteración de la conducta** (si se trata de una sola cita aislada o de múltiples citas falsas o tergiversadas dentro del mismo escrito o en otros escritos del abogado y si continuó reafirmándose en dicho precedente a lo largo de los procedimientos judiciales); **(4) si hubo una investigación razonable y revisión humana directa previa; (5) el nivel de experiencia, especialización y conocimiento del abogado** sobre las herramientas tecnológicas e inteligencia artificial utilizadas.[8]

---

[8] Véase, también, *Mattox v. Prod. Innovations Rsch., LLC, supra*, donde se establecieron varios parámetros, cimentados en la Regla 11, para guiar a los tribunales en casos posteriores donde se presenten escritos

## IV

Por todo lo antes expuesto, estoy conforme con el curso de acción adoptado por la mayoría de este Tribunal. Como señalé al comienzo, la administración de la justicia descansa en la autenticidad del derecho que se invoca ante los tribunales. Por tanto, cuando un abogado presenta precedentes inexistentes o afirma como derecho vigente aquello que nunca fue decidido por tribunal alguno, no solo incumple con su deber de diligencia y competencia, sino que

---

con citas generadas a raíz de las alucinaciones de la inteligencia artificial:

Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence. While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent. No uniform standard yet governs this issue. This Court therefore articulates the following framework, grounded in Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, to guide this Court in future cases in which AI-generated hallucinations appear in filings.

When a pleading containing fabricated citations or nonexistent law has been identified and a hearing held, this Court shall evaluate three core factors:

**1. Verification and Inquiry** — Whether counsel conducted a **reasonable, human-based verification of every cited authority before filing.** A reasonable inquiry requires more than reliance on an automated tool; **it demands independent confirmation through recognized primary legal sources. The signature of an attorney certifies human diligence, not mechanical output.**

**2. Candor and Correction** — Whether counsel promptly **disclosed the use of AI and corrected the record once inaccuracies were discovered.** Candor after filing weighs heavily in mitigation; concealment or minimization aggravates the violation. **The duty of candor extends beyond the moment of signature, it continues for as long as the filing remains before the Court.**

**3.** Accountability and Supervision — Whether supervising or associated attorneys exercised oversight consistent with Model Rules 5.1 and 5.3 and whether firm-level safeguards existed to prevent recurrence. The inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it.

**These factors balance culpability against mitigation and aim to deter repetition rather than destroy reputation. They also provide a path for future litigants in this Court when confronting AI-related misconduct, recognizing that the issue implicates the ethical foundations of advocacy itself.** (Negrilla suplida).

socava el sistema adversativo y, de paso, compromete la integridad del proceso judicial. Quien firma un escrito, continúa certificando que las alegaciones de hecho y de derecho que en el escrito se consignan descansan sobre una investigación razonable y sobre autoridad jurídica real. Aunque la tecnología puede ampliar nuestras capacidades, su uso es bienvenido cuando media el rigor que exige la búsqueda de la verdad y la protección de la integridad de los procesos judiciales.

En fin, luego de evaluar los hechos particulares del presente caso, y debido a que es la primera vez que nos enfrentamos ante esta controversia, estoy conforme con el apercibimiento y archivo de la queja presentada contra las Lcdas. Irizarry Centeno y Bonilla Irizarry. Asimismo, este Tribunal advierte que la reiteración de conductas de esta naturaleza podría acarrear la imposición de sanciones disciplinarias severas.


Camille Rivera Pérez
Jueza Asociada